# LEVENTHAL & KLEIN, LLP
### ATTORNEYS AT LAW
#### 45 MAIN STREET, SUITE 230
#### BROOKLYN, NY 11201

T (718) 722-4100
F (718) 522-3225

June 10, 2010

**VIA ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   <u>Robert Graham and J.G. v. City of New York, et al.,</u>
08 CV 3518 (KAM)(RML)

Your Honor:

I represent Robert Graham and his infant son J.G., plaintiffs in the above-referenced civil rights action. I write in response to defendants' May 27, 2010 letter, pursuant to Fed. R. Civ. P. 72(a), objecting to the Honorable Robert M. Levy's May 14, 2010 order denying defendants' motion for reconsideration of the Court's April 2, 2010 order. The April 2, 2010 order granted plaintiffs' motion for a protective order precluding defendants from conducting the deposition of J.G., who was four when the incident occurred, and is now seven, until after any prospective dispositive motion practice by defendants. For the reasons set forth below, defendants' objections lack merit.

At the outset, it should be noted that defendants ostensibly object, <u>not to</u> Magistrate Levy's April 2, 2010 order granting a protective order precluding defendants from conducting J.G.'s deposition, <u>but rather to</u> Magistrate Levy's May 14, 2010 order denying reconsideration of his April 2, 2010 order. <u>See</u> Defts. May 27, 2010 letter at 1 ("I write respectfully pursuant to Fed. R. Civ. P. 72(a) to object to the denial of defendants' motion for reconsideration of the Honorable Robert M. Levy's April 2, 2010 Order, which granted plaintiff's motion for a protective order").

Reconsideration of a previous order is, of course, "an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *In re Loral Space & Communications Ltd.*, 346 B.R. 71, 72 (S.D.N.Y. 2006) (quoting *In re Health Management Systems Inc. Securities Litigation*, 113 F. Supp.2d 613, 614 (S.D.N.Y. 2000)). Local Civil Rule 6.3 thus has been "'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Allied Maritime, Inc. v. Rice Corp.*, 361 F. Supp.2d 148, 149 (S.D.N.Y. 2004) (quoting *Dellefave v. Access Temps, Inc.*, No. 99 Civ. 6098, 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)). Reconsideration therefore "will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).

Because the defendants did not attach the text of the May 14, 2010 electronic order being appealed ("the order") to their papers, the text of the order, which is set forth on the Court's docket sheet for this action, is as follows:

> ORDER denying 28 Motion for Reconsideration. I have carefully reviewed the motion for reconsideration and considered the underlying arguments. The motion is denied on two grounds. First, the standard for prevailing on a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255,257 (2d Cir. 1995). Additionally, Local Civil Rule 6.3 is to be "narrowly construed and strictly applied...." Ades v. Deloitte & Touche, 843 F.Supp. 888, 890 (S.D.N.Y. 1994). A motion for reconsideration is not the moment to raise new arguments. Nor is a Local Rule 6.3 motion to be used as a substitute for appeal. Finally, the decision whether to grant or deny a motion for reconsideration is within the sound discretion of the court. See Devlin v. Transp. Comm'ns Union, 175 F.3d 121, 132 (2d Cir. 1998). Defendants' arguments do not satisfy this strict standard. The state law cases defendants now raise are not properly introduced on a motion for reconsideration, but should have been presented earlier, as the issue of whether JG may be competent to be sworn is hardly new, but was present throughout the argument of the original motion. Nonetheless, I have considered the merits of defendants' arguments, reviewed the case law, and find, after weighing the relevant factors in this difficult case, that the balance struck between the rights of plaintiffs and defendants in the original order is appropriate. Ordered by Magistrate Judge Robert M. Levy on 5/14/2010. (Levy, Robert) (Entered: 05/14/2010)

As Magistrate Levy observed in the order, "Local Civil Rule 6.3 is to be 'narrowly construed and strictly applied....' *Ades v. Deloitte & Touche*, 843 F.Supp. 888, 890 (S.D.N.Y. 1994). A motion for reconsideration is not the moment to raise new arguments. Nor is a Local Rule 6.3 motion to be used as a substitute for appeal. Finally, the decision whether to grant or deny a motion for reconsideration is within the sound discretion of the court. *See Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 132 (2d Cir. 1998).

Here, Magistrate Levy was correct in concluding the following in support his decision that the defendants' arguments on reconsideration failed to meet this stringent standard: "The

state law cases defendants now raise are not properly introduced on a motion for reconsideration, but should have been presented earlier, as the issue of whether [J.G.] may be competent to be sworn is hardly new, but was present throughout the argument of the original motion." Defendants do not dispute Magistrate Levy's observation. Indeed, defendants do not even mention -- let alone address – the observation. Defendants thus effectively concede that the state law cases they raised on reconsideration should have been presented earlier, in opposition to plaintiffs' motion for a protective order.

Defendants do acknowledge in their submission that a district judge may modify or set aside a magistrate judge's order on a non-dispositive matter only if the magistrate judge's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Defts. May 27, 2010 Letter at 3. Because the state law cases defendants raised on reconsideration should have been presented earlier, and in any event were not binding on the Court, Magistrate Levy properly denied reconsideration. The May 14, 2010 order thus was not clearly erroneous or contrary to law.

To the extent that the defendants are using their objections to the order as an end run around their failure to timely appeal Magistrate Levy's April 2, 2010 order granting plaintiffs' motion for a protective order, their objections in that regard are untimely. A party must serve and file objections to a magistrate judge's order on a non-dispositive matter within fourteen days after being served with a copy. Fed. R. Civ. P. 72(a). Defendants' time to serve and file objections to Magistrate Levy's April 2, 2010 order thus expired on April 19, 2010, fourteen days from the date (April 5, 2010) that defendants received electronic notice of Magistrate Levy's order. The filing of a motion for reconsideration did not extend that time.

Even if defendants' objections to Magistrate Levy's April 2, 2010 ruling were timely, and they are not, their objections lack merit, as correctly concluded by Magistrate Judge Levy in the order ("Nonetheless, I have considered the merits of defendants' arguments, reviewed the case law, and find, after weighing the relevant factors in this difficult case, that the balance struck between the rights of plaintiffs and defendants in the original order is appropriate.").

For instance, defendants argue that J.G.'s deposition is necessary to refute his false arrest claim. Defts. May 27, 2010 letter at 4-5. But the testimony they seek to elicit would not accomplish that purpose. Irrespective of J.G.'s recollection of the June 8, 2007 incident, a jury still could reasonably infer J.G.'s consciousness of confinement from other testimony, including that of Ms. Fraser, an eyewitness to the incident, who saw J.G. locked in the car, crying hysterically, as his father Robert Graham was led away in hand cuffs. The witness provided a written statement and sworn testimony in this case, both of which confirm that J.G. was left in the vehicle on a hot June day, in the middle of traffic on a two way, two lane street, sweating with no air conditioning, and that he was crying. A copy of Ms. Fraser's written statement, which comports with her sworn testimony, is annexed hereto as Exhibit A.

Indeed, even defendant Glenn conceded in his deposition that J.G. was confined to the vehicle and in police custody. Relevant excerpts of Glenn's testimony are set forth on pages one through three of plaintiffs' initial motion for a protective order, which is annexed hereto as

Exhibit B.   There can be no credible dispute that J.G. was locked in the car, visibly in distress, and under the defendants' care, custody and control during the incident.[1]

Defendants also argue that J.G.'s deposition may "frustrate" extrinsic evidence, including Ms. Fraser's testimony, that J.G. was visibly upset during the June 8, 2007 incident. Defts. May 27, 2010 letter at 4. Once again, irregardless of J.G.'s recollection, based on the sworn testimony of Ms. Fraser, Robert Graham, and defendant Officer Glenn, there is no material dispute in the record as to whether J.G. was upset and crying during the incident. True, J.G. was upset from witnessing his father Robert Graham's arrest. The fact remains, however, that the arrest was quite upsetting insofar as Mr. Graham was violently extracted from his car without justification by defendant Glenn. But that does not mean that J.G. was not also upset at being locked in the hot car without access to his dad.   Even defendant Glenn concedes that J.G. was visibly upset after Glenn left him confined in the vehicle. See Exhibit A, pages 1-3. The suggestion that J.G. was merely experiencing the type of discomfort experienced by any impatient child is patently ludicrous.

The cases on which defendants principally rely are factually inapposite. In *Almy v. Pappas*, 134 A.D.2d 946, 522 N.Y.S.2d 81 (4th Dep't 1987), for example, the court allowed the infant plaintiff's deposition because "[d]efendant has exhausted other available sources of information and it appears that the infant plaintiff is the only person with personal knowledge of the facts." *Id.* at 81. Here, by contrast, there are other person with personal knowledge of the facts, including plaintiff Robert Graham, Ms. Fraser, and the defendant officers.

Moreover, we note that defendants' "Background and Procedural History" is inaccurate and/or incomplete. As of November 30, 2009, defendants represented to the Court and the undersigned that they intended to move for partial summary judgment as to J.G.'s claims without J.G.'s testimony. In particular, Mr. McCann's position was that "As plaintiff J.G. is approximately seven years old, defendants wish to avoid conducting his deposition unless absolutely necessary." See November 30, 2009 letter from Max McCann to the Hon. Robert M. Levy, DE 22, annexed hereto as Exhibit C, on page 1. Thus, Mr. McCann's position at that time was essentially consistent with the Court's ruling in granting the protective order – that J.G. could be deposed prior to trial if his claims survive summary judgment, and that his testimony was not required for defendants to move for partial summary judgment with respect to J.G.'s claims.

---

[1] It is plaintiffs' contention that any dispositive motion regarding J.G.'s claims prior to trial would be premature, as J.G.'s claims are derivative of a finding of false arrest on Robert Graham's false arrest claim. In other words, if the jury were to conclude that Robert Graham was not falsely arrested, the defendant officers would have had arguable probable cause to seize J.G. while they dealt with Robert Graham's arrest. If the jury concludes that Robert Graham was falsely arrested, then plaintiffs submit that J.G.'s seizure would, *ipso facto*, be unlawful as there are no material facts in dispute with respect to J.G.'s seizure by the defendants. Thus, any prospective pre-trial motion by defendants for dismissal of J.G.'s claims will be vigorously opposed by plaintiffs at the pre-motion conference stage.

Defendants did not firmly commit to taking J.G.'s deposition until January 29, 2010, when defendants requested an extension of the January 31, 2010 deadline for completion of fact discovery so that they could depose J.G. They were previously authorized on December 11, 2009 by Magistrate Judge Levy to depose J.G. by the end of January 2010, but failed to do so in a timely manner. The parties thereafter agreed upon February 23, 2010 as the date for J.G.'s deposition. As I prepared for the deposition, I became concerned that J.G., who is now only seven years of age, would be unduly traumatized by the deposition. Indeed, both Robert Graham and Yvonne Fraser have given sworn testimony in the case confirming that this incident was very traumatic for J.G. Early on February 19, 2010, I called opposing counsel to express my concerns, leaving a voicemail. I also e-mailed my concerns to opposing counsel that same day. Opposing counsel did not call me back until 4 p.m. on February 22, 2010, the eve of the scheduled deposition. I immediately moved for a protective order.

In sum, Magistrate Judge Levy correctly balanced the competing interests herein after extensive argument and careful review of the parties' contentions. The Court's rulings did not foreclose a deposition of J.G. in the event that plaintiffs submitted evidence from J.G., presumably by affidavit under penalty of perjury, in opposition to the defendants' prospective motion, and it did not preclude a deposition of J.G. before trial. Magistrate Judge Levy correctly pointed out that the "the potential trauma for a child this young, who likely cannot be sworn, outweighs the speculative potential benefit to defendants of attempting to take his deposition", and that "the testimony of a seven-year-old about events that occurred when he was four would not add meaningfully to defendants' motion."

Because Magistrate Judge Levy's Order of May 14, 2010 denying the defendants' motion for reconsideration was within the sound discretion of the court, and because any objection to the underlying order of April 2, 2010 is untimely, defendants' objections dated May 27, 2010 should be overruled.

Thank you for your consideration.

Respectfully submitted,

Brett H. Klein

Enc.

cc:    Max McCann, Esq.
       The Honorable Robert M. Levy