# LEVENTHAL & KLEIN, LLP

ATTORNEYS AT LAW
45 MAIN STREET, SUITE 230
BROOKLYN, NY 11201

T (718) 722-4100
F (718) 522-3225

May 25, 2012

**VIA ECF**

Honorable Margo K. Brodie
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  <u>Robert Graham v. City of New York, et al.</u>, 08 CV 3518 (MKB)(RML)

Your Honor:

  I represent Robert Graham the plaintiff in the above-referenced civil rights action. I write in response to the defendants' request for a pre-motion conference. For the reasons set forth below, plaintiff submits that any proposed motion would be futile.

  Plaintiff Robert Graham is a fifty one year old gentleman who was born in Jamaica, and later emigrated to the United Kingdom, and then to the United States. He has been employed by the New York City Department of Environmental Protection since 1988, has no criminal record. On June 8, 2007, he was driving his then four-year-old son, J.G., home from a day care center, when he was stopped by the defendant NYPD Officers Glenn and Ugbomah. Mr. Graham was forcibly ejected from his car, tightly handcuffed, and placed in a police vehicle for approximately 30 minutes. Despite making the defendants aware that his arm was sensitive due to the recent removal of a malignant tumor, the defendants intentionally left Mr. Graham in an excruciating position, causing wanton and unnecessary pain for an extended period of time, before releasing him with a baseless summons that was ultimately dismissed and sealed. During this unreasonable seizure, and as a direct result of the defendants' actions, plaintiff was separated from his toddler son.

### A. There is Ample Evidence Supporting Plaintiff's False Arrest Claim

  To prevail on a false arrest claim, a plaintiff must prove that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citations omitted). The existence of probable cause to arrest "is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Id.* Where the parties allege divergent accounts of the facts, summary judgment is not appropriate because the

court cannot accept one account over another or make credibility determinations on summary judgment. *See Tribie v. Parwanta*, WL 246619, 5-6 (S.D.N.Y. 2012); *Livingston v. City of White Plains, N.Y.*, 2011 WL 7101234, 4 (S.D.N.Y. 2011).

Defendants apparently contend that plaintiff somehow admits to refusing comply with a lawful order to provide his vehicle registration, and that this refusal purportedly constituted probable cause for obstruction of governmental administration. The defendants misstate Mr. Graham's testimony, and ignore many of the disputed facts which impact the existence of probable cause. As an initial matter, Mr. Graham did not admit to refusing to provide his registration. Instead, Mr. Graham testified that as he "was in the act of giving" his vehicle registration to Glenn, and that Mr. Graham "paused momentarily to ask [Glenn] what he was going to do." When Glenn replied that he was going to issue Mr. Graham a summons for failing to obey an order to back up his car, Mr. Graham pointed out that he could not back up his car because there was a car behind him. At that time, the evidence will show that Glenn "just got in a rage," gratuitously and maliciously dragged Mr. Graham out of his car, handcuffed him and left him deliberately in a painful position, and confined him against his will. Deposition of Robert Graham dated July 22, 2009 ("Graham Dep.") at 70:1-71:2. It is also relevant that Glenn testified that he believed that Mr. Graham *did* provide his registration to him, but refused to provide his license. Glenn Dep. at 89:13-17. Mr. Graham, on the other hand, claims that he had previously provided his license to Glenn, and remained at the scene of the car stop for approximately twenty minutes while Glenn took off to investigate a call from up the block. Graham Dep. At 69:3-14.

Based upon this testimony, among other reasons, a jury could find that Mr. Graham did not refuse to comply with Glenn's request to provide his vehicle registration, but instead was complying with that request when Glenn went into a rage. A jury could also find that Glenn arrested Mr. Graham merely because Mr. Graham exercised his First Amendment right to question the issuance of a summons. *Cf. Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) (20 or 30 second conversation between activist and police officer in charge of the scene could not reasonably objectively be interpreted as an obstruction of governmental administration). The parties' clearly dispute "pertinent events and the knowledge of the officers." *Id.* Summary judgment is thus inappropriate because the court cannot accept one account over another or make credibility determinations on summary judgment. *See Tribie*, WL 246619, 5-6; *Livingston*, 2011 WL 7101234, 4.

**B.      There is Ample Evidence Supporting Plaintiff's Excessive Force Claim**

Defendants contend that Mr. Graham cannot prevail on his excessive force claim because he has alleged only *de minimis* force. Courts, however, "have allowed plaintiffs to recover, even though the injury caused was not permanent or severe, where the force used was excessive." *Lemmo v. McKoy*, 2011 WL 843974, at *6 (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir.1987). *See also, Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (referencing *Robinson* and stating that "we have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.").

2

To determine whether a police officer has used excessive force, the court should not just consider the injuries, but should consider "whether the force was reasonable in light of the circumstances and facts there and then confronting the police officers." *Livingston,* 2011 WL 7101234, 4. The court should consider factors such as: "the severity of the crime at issue; whether the suspect posed an immediate threat to the officers or others; and whether the suspect was resisting arrest or attempting flight to evade arrest." *Id.* (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1988).

Here, Mr. Graham maintains that Glenn forcefully removed and dragged him from his car, put excessively tight handcuffs on him and brought his hands way up behind his back, refused to loosen the handcuffs despite Mr. Graham's repeated requests and complaints that he had recently undergone a surgical procedure to remove a malignant tumor on his arm and that the arm was sensitive; and placed Mr. Graham in an excruciatingly painful position in a cramped police vehicle for over thirty minutes, bringing plaintiff to tears from the pain. Graham Dep. at 70:20-71:2, 129:15-24, 130:10-19. A jury could find that Glenn's use of such force against Mr. Graham under the circumstances here -- where Mr. Graham was in the process of giving Glenn his vehicle registration while lawfully questioning the basis for a summons -- was unreasonable. *Cf. United States v. Schatzle,* 901 F.2d 252 (2d Cir. 1990) (*Graham v. Connor*, 490 U.S. 386 (1989), "requires that the district court impress upon the jury the necessity of assessing whether the force employed by [Agent] Schatzle was reasonable in light of the particular situation and dangers facing [Agent] Schatzle at the time he encountered [victim] Gorayeb").

**B.  There is Ample Evidence Supporting Plaintiff's Remaining Claims**

Defendants claim plaintiff's malicious abuse of process claim fails because "plaintiff has no evidence that defendants attempted to compel plaintiff to perform any act in order to obtain a collateral objective after the issuance of legal process." *See* Defendants May 18, 2012 Letter. To the contrary, plaintiff alleges, and a jury could find, that defendants issued the summons, which compelled plaintiff's appearance in a New York City Criminal Court on August 29, 2007, to obtain the collateral objective of covering up their abuse of authority; that is to justify the improper use of force, handcuffing, confinement, and arrest of plaintiff.

Defendants next claim that plaintiff's First Amendment claim fails because plaintiff has not presented evidence that defendants acted in response to plaintiff's exercise of free speech or that his speech was chilled by the defendants' actions. "To prevail on a First Amendment retaliation claim, plaintiff must prove "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Anderson v. City of New York*, 817 F.Supp.2d 77, 96 (E.D.N.Y. 2011) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001). Defendants apparently do not contest that the first element has been met. Under the second factor, "if a genuine issue of material fact exists on whether there was probable cause for the arrest, granting summary judgment on a First Amendment claim may be inappropriate." *Id.* at 96-97 (quoting *Musso v. Hourigan,* 836 F.2d 736, 743–44 (2d Cir. 1988)). Under the third prong, the Second Circuit and district courts have held that "in cases where the plaintiff is subjected to criminal prosecution . . . 'if a plaintiff demonstrates a lack of

3

probable cause, there is no separate chilling requirement.'" *Id.* (Collecting Cases). Some opinions have, on the other hand, held that plaintiffs must show some change in behavior. *Id.* (citing *Curley,* 268 F.3d 65, 73).

 Here, as discussed above, plaintiff specifically alleges that defendant Glenn arrested him after he questioned the officer as to why he was being issued a ticket. A jury could thus find that Glenn arrested Mr. Graham and issued process to him in retaliation for being questioned. To the extent that the law requires a separate chilling requirement, plaintiff testified that the incident continues to affect him and that he starts to break down when he re-lives it, and that he copes with it to the extent that a "situation doesn't present themselves wherein it comes back." Graham Dep. 147:7-25. This testimony presents a question of fact as to whether Glenn's actions had a chilling effect on Mr. Graham.

 Defendants next argue that plaintiff's claim of familial interference is subsumed within his Fourth Amendment claim for false arrest and thus should be dismissed. Plaintiff contends that his claim for familial interference is a separate and distinct constitutional claim from the false arrest claim. The Constitution, in some circumstances, "protects familial relationships from unwarranted government interference. *See Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (citing *Roberts v, United States Jaycees*, 460 U.S. 609, 617-18 (1984)). In *Roberts*, the Supreme Court recognized a right to freedom of intimate association and noted the Court's "long tradition of affording "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Id.* (citing *Roberts* at 618-19). A jury could find that the defendants' actions unjustifiably interfered with Mr. Graham's familial relations with his son in as much as plaintiff was against his will separated from his son for a period of time.

 Defendants further contend that Robert Graham cannot prevail on a failure to intervene claim against defendant Ugbomah because Mr. Graham has not established an issue of fact with respect to any constitutional violation. Plaintiff, however, contends that there is an issue of fact as to all claims and thus defendants' argument must fail. *See Richardson v. Providence*, 2012 WL 1155775, 4 (E.D.N.Y. 2012) (upholding plaintiff's claim "[b]ecause defendants' only basis for dismissing plaintiff's claims for failure to intervene against officer Dyal is that plaintiff cannot establish a violation of any constitutional right, and this court has found that a material issue of fact exists as to whether plaintiff was unreasonably detained").

 Finally, defendants contend plaintiff's supervisory liability claim fails because no supervisory defendants are named, and that plaintiff's municipal liability claim fails because plaintiff has failed to allege a constitutional violation. While plaintiff would be willing to discontinue the supervisory liability claim, as set forth above, because issues of fact exist with respect to the underlying constitutional violations at issue in this case, any motion relating to plaintiff's municipal liability claim would be futile.

### B.  The Individual Defendants Are Not Entitled to Qualified Immunity

 "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct

was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (internal quotations and citations omitted). Defendants argue that Officers Glenn and Ugbomah are entitled to qualified immunity because police officers reasonably thought Mr. Graham was guilty of obstruction of governmental administration and any force used was necessary to effectuate arrest.

To the extent that the events leading to Mr. Graham's arrest are in dispute, defendants' motion for summary judgment on the qualified immunity issue is premature. "Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). "The fact-finder must determine any disputed material facts, and on the basis of the facts permissibly found, the court must decide 'whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct.'" *Manganiello v. City of New York*, 612 F.3d at 166 (quoting *Zellner v. Summerlin*, 494 F.3d at 367). The Court's determination on the qualified immunity issue thus must await the jury's determination on the disputed material facts.

## Conclusion

In sum, there is ample evidence supporting plaintiff's claims. For these reasons, defendants' motion for summary judgment would be futile, and this matter should be allowed to proceed to trial.

Thank you for your consideration.

Respectfully submitted,

Brett H. Klein

cc:   Max McCann, Esq.

5