UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ROBERT GRAHAM,

                        Plaintiff,

                                                        **MEMORANDUM & ORDER**
                v.                                      08-CV-3518 (MKB)

CITY OF NEW YORK, WILLIAM GLENN,
ANDREW UGBOMAH, and JOHN AND JANE
DOE 1 through 10, individually and in their
official capacities,

                        Defendants.

---------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

        Plaintiff Robert Graham brought the above-captioned action against the City of New

York and John and Jane Doe 1 through 10.  Plaintiff amended the Complaint twice and as part of

the amendments, added Defendants William Glenn and Andrew Ugbomah.  The Second

Amended Complaint (the "Complaint") asserts claims for deprivation of rights, excessive force,

false arrest, malicious abuse of process, violation of the First Amendment, interference with

familial relations, failure to intervene, supervisory liability, and municipal liability, pursuant to

42 U.S.C. § 1983.  The Complaint also asserts claims for assault, battery, negligent infliction of

emotional distress, false arrest, malicious abuse of process, negligent hiring and retention,

negligent training and supervision, negligence, and *respondeat superior* pursuant to New York

state law.  Defendants moved for summary judgment on all claims.  In addition to claiming that

Plaintiff failed to raise triable issue of facts, Defendants also asserted that they are immune from

all of Plaintiff's federal and state law claims.

The Court heard oral argument on October 22, 2012.  At oral argument, Plaintiff withdrew his claims for deprivation of rights, malicious abuse of process, violation of the First Amendment, interference with familial relations, supervisory liability, and municipal liability pursuant to §1983 and his claims for negligent infliction of emotional distress, malicious abuse of process, negligent hiring and retention, negligent training and supervision, and negligence pursuant to New York state law.  The Court reserved decision on Plaintiff's excessive force, false arrest, and failure to intervene claims pursuant to § 1983, as well as Plaintiff's assault, battery, false arrest, and *respondeat superior* claims pursuant to New York state law and Defendants' immunity defenses.  For the reasons discussed below, the Court grants summary judgment on the assault and battery claims against Defendant Ugbomah and denies Defendants' motion for summary judgment on all of the remaining claims.

## I.    Background

On June 8, 2007, at approximately 5:30 p.m., Plaintiff was driving with his then four-year old son on Church Avenue near East 96th Street in Brooklyn, New York.  (Def. 56.1 ¶ 1.) Defendants William Glenn and Andrew Ugbomah, New York City police officers (collectively the "Officer Defendants") were on Church Avenue in a marked police vehicle responding to a police report.  (*Id.* at ¶ 3.)  The Officer Defendants turned on their sirens and gestured Plaintiff to back up.  (*Id.* at ¶ 4.)  According to Plaintiff, he gestured that he could not back up because there was a van parked directly behind him.  (Pl. 56.1 ¶ 5.)  Defendant Glenn then exited his car, approached Plaintiff's car and requested Plaintiff's driver's license.  (Def. 56.1 ¶ 6.)  Plaintiff gave Defendant Glenn his driver's license, which Defendant Glenn took.  (*Id.* at ¶¶ 6–7.) Defendant Glenn then returned to his vehicle and drove to the end of the block to investigate the police report.  (*Id.*)  After 15 to 20 minutes, the Officer Defendants returned and Defendant

Glenn approached Plaintiff's car and asked him for his registration. (*Id.* at ¶¶ 8–9.) Plaintiff removed the registration from an envelope stored above his visor. (*Id.* at ¶ 10; Pl. 56.1 ¶ 10.)

The parties dispute whether Plaintiff actually made the registration available to Defendant Glenn. According to Defendants, Plaintiff stopped short of making the registration available and began to ask Defendant Glenn why he needed the registration. (Def. 56.1 ¶¶ 11–12.) Defendant Glenn then warned Plaintiff that if he did not turn over his registration, he would be arrested. (*Id.* at ¶¶ 14–15.) Defendants assert that Plaintiff continued to refuse to turn over his registration. (*Id.*) According to Plaintiff, he provided his registration by "holding it in the middle of his open driver's side window where Officer Glenn could take it from him." (Pl. 56.1 ¶¶ 12–13.) While doing so, Plaintiff began to ask Defendant Glenn why he needed it. (*Id.*) Plaintiff also tried to explain that he was unable to back up earlier because of a parked van. (*Id.*)

After the exchange regarding Plaintiff's registration, Plaintiff was forcibly removed from his car. (Def. 56.1 ¶ 16.) According to Plaintiff, Defendant Glenn "flew into a rage, dragged [him] from his vehicle, shoved him against it, and handcuffed him behind his back." (Pl. 56.1 ¶ 14.) Plaintiff's son was taken by a family friend to his nearby daycare center. (Def. 56.1 ¶ 17.) Plaintiff was placed in the back of the police car and was made to sit with his hands cuffed behind his back. (*Id.* at ¶ 19; Pl. 56.1 ¶ 19.) Plaintiff alleges that he had recently undergone surgery to remove a cancerous tumor from the bicep of his right arm and the position caused the scar tissue to stretch and was especially painful. (Pl. 56.1 ¶ 19.) Plaintiff pleaded with the Officer Defendants to remove the handcuffs, which was eventually done. (Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) Plaintiff was in the police car for 30 to 45 minutes and was eventually released with a summons for disorderly conduct. (Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Federal Claims

#### i. False Arrest

To prevail on a false arrest claim, Plaintiff has to prove that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false

arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Ackerson*, 702 F.3d at 19–20 (citing *Weyant* for probable cause analysis). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant,* 101 F.3d at 852). The main question before the Court is whether Defendant Glenn had probable cause to arrest Plaintiff.[1] For the following reasons, the Court finds that genuine issues of fact exist and a reasonable jury could find that Defendant Glenn lacked probable cause to arrest Plaintiff.

Defendants assert that probable cause existed to arrest Plaintiff for obstruction of governmental administration ("OGA") and violation of New York Vehicle and Traffic Law § 401. (Def. Summ. J. 9–12.) Defendants allege Plaintiff could have reasonably been found guilty of OGA for failure to comply with Defendant Glenn's request for his registration. (Def. Summ. J. 9–11.) "Under New York law, obstructing governmental administration has four elements: '(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference.'" *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (quoting *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)); *see also Esmont v. City of New York*, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005)

---

[1] Defendants argue that there was reasonable suspicion to initially stop Plaintiff's car. (*See* Def. Summ. J. 6–7.) They argue that Plaintiff was in violation of the section which requires drivers to yield to emergency vehicles. *See* N.Y. Veh. & Traf. § 1144. In opposition to Defendants' summary judgment motion, Plaintiff does not dispute whether the Officer Defendants had reasonable suspicion to stop him. (*See generally* Pl. Opp'n 7–17.) For the purposes of this motion, the Court assumes without deciding that the initial stop of Plaintiff was proper.

(outlining the elements of OGA (citing *People v. Stumpp*, 493 N.Y.S.2d 679, 680 (1985))).

Defendants also assert that Plaintiff's failure to provide his registration was a violation of the

New York's Vehicle and Traffic Law. (Def. Summ. J. 11–12.) The law requires that drivers in

New York register their motor vehicles and present their registration to police officers upon

request. N.Y. Veh. & Traf. § 401. Failure to provide registration is a traffic violation.[2] N.Y.

Veh. & Traf. § 155.

Under both theories, Defendants' argument is wholly based on their assertion that

Plaintiff failed to comply with Defendant Glenn's instruction to provide his registration. (Def.

Summ. J. 9–11; Def. Reply 3–6.) Defendants argue that Plaintiff's deposition testimony clearly

supports their contention that Plaintiff did not provide the registration. However, the deposition

is ambiguous on this point. For example, Plaintiff states "I had the registration in an envelope

above my visor, so I take it down, and I was in the act of giving it to him and I paused

momentarily to ask the officer what he was going to do[.]" (Graham Dep. 69:24–70:2.) At

another point in the deposition, Plaintiff suggests that he stopped short of giving the registration:

> Q.     When you say you were in the act of handing it, handing your registration to
> Officer Glenn, what stopped you from handing your registration to Officer Glenn?
>
> MR. KLEIN:   Objection. Go ahead.
>
> A.     What stopped me?

---

[2] Individuals may be arrested for failure to produce their registrations and other traffic violations. *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (noting that under New York Vehicle & Traffic. § 155, officers have the ability to arrest even for "minor" offenses); *People v. Stith*, 507 N.Y.S.2d 283, 284–85 (App. Div. 1986) ("Defendants' failure to produce the truck's registration was presumptive evidence of operation of an unregistered vehicle, so detention until the registration could be checked is constitutional." (citations omitted)); *People v. Bulgin*, 908 N.Y.S.2d 817, 827 (Sup. Ct. 2010) (noting that "the police [have] the option to arrest a motorist who commits a traffic infraction in their presence"); *People v. Griffin*, 456 N.Y.S.2d 334, 339 (Sup. Ct. 1982) (noting that individuals could be arrested for failure to produce registration or license).

Q.      Yes.

A.      Well, I was just – I just – I just wanted to ask him, to ask the question what was he going to do, because usually when we – you know, when they ask you for your registration and your license and so forth, you know, more likely you feel like you going to be summoned, and so I just asked, what was he going to do at that point, so that's what stopped – why I just paused to ask that question.

(Graham Dep. at 105:13-106:1.)  However, a page later Plaintiff states:

Q.   Your registration was in your hand when you
        asked what Officer Glenn was going to do?

A.   Yes, it was in my hand.

Q.   Where was your hand?

A.   Like, like about this position handing, like about to go through the window to hand it to him and I kind of just stopped and asked the question (indicating).

MR. MCCANN:  Indicating shoulder level right hand at approximately –

THE WITNESS:  Middle of the window.

MR. MCCANN:  Area of the window.

Q.   Can you describe where your hand was?

A.   Like middle of the window, you know, just like he is standing there just waiting for me to just hand it through the window.

(Graham Dep. at 106:2–16.)  This testimony supports Plaintiff's assertion that he provided his registration by "holding it in the middle of his open driver's side window where Officer Glenn could take it from him" and while in the act of giving his registration, he asked Defendant Glenn why Defendant Glenn needed it.  (Pl. 56.1 ¶¶ 12–13.)  A reasonable jury could infer from Plaintiff's testimony that he was attempting to provide his registration by placing it in the middle of his car window.  Accordingly, the Court finds a genuine issue of fact exists regarding whether Plaintiff obstructed government administration or violated the New York Vehicle and Traffic Law.  *See Barrows v. Seneca Foods Corp.*, No. 12-CV-970, 2013 WL 656742, at *3 (2d Cir.

Feb. 25, 2013) (summary order) (holding that "gaps and inconsistencies" in the plaintiff's testimony as long as the testimony is not "wholly conclusory, contradictory, or incomplete" should go to the jury for the "jury to 'assess[ ] . . . a witness's credibility'" (alteration in original) (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010))); *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 76 (E.D.N.Y. 2012) (stating that in order to find for a plaintiff at summary judgment, there need not be one interpretation of the deposition testimony, as long as "a rational jury" could draw the interpretation favorable to the non-moving party and it was "a reasonable" interpretation). Ultimately, the jury will decide whether to credit Plaintiff's version or the Defendants' version of the facts. *Fincher*, 604 F.3d at 725 ("[T]he assessment of a witness's credibility is a function reserved for the jury."); *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996))); *Milfort v. Prevete*, No. 10-CV-4467, 2013 WL 519041, at *5 (E.D.N.Y. Feb. 13, 2013) ("'[T]the credibility of witnesses is not to be assessed by the court on a motion for summary judgment.' 'Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.'" (citations omitted)). Defendants' motion for summary judgment on Plaintiff's § 1983 false arrest claim is denied.

### ii. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010). Because the Fourth Amendment test of reasonableness is one of "objective reasonableness," the inquiry is fact specific and requires a balancing of various factors. *Id.*; *see also Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20,

2011) ("When excessive force is alleged, a court must determine 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" (quoting *Graham v. Connors*, 490 U.S. 386, 397 (1989)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 397). A court considers the totality of the circumstances when determining whether excessive force was used against a plaintiff. *Tracy*, 623 F.3d at 96. When determining whether an officer's actions constitute excessive force, a court considers: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96; *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" (citations omitted)).[3] Viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find that excessive force was used against Plaintiff.

### (a) Forcibly Removing Plaintiff from his Car

According to Plaintiff, Defendant Glenn "flew into a rage, dragged [him] from his vehicle, shoved him against it, and handcuffed him behind his back." (Pl. 56.1 ¶ 14.)

---

[3] Plaintiff argues that the totality of the circumstances test requires the Court to analyze Plaintiff's allegations that he was forcibly removed from his car and tightly handcuffed as one action. (Pl. Opp'n 20.) Defendants assert that the totality of the circumstances test does not require that a court aggregate the Officer Defendants' actions into one singular claim. (Def. Reply 8–11.) Defendants also argue that claims for unreasonable handcuffing must be analyzed separately from other accusations of excessive force. (*Id.*) However, the Court need not decide if Plaintiff's unreasonable handcuffing claims must be analyzed separately, because even under Defendants' piecemeal proposal, Plaintiff's excessive force claim survives summary judgment.

Defendants claim that Plaintiff cannot maintain an excessive force claim because forcibly removing Plaintiff from his vehicle was *de minimis* force, especially since Plaintiff did not suffer any serious injury. (Pl. Opp'n 14–15.) Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Glenn used excessive force when he forcibly removed Plaintiff from his car.

Defendants are liable as long as the force used exceeded the force needed for the factual circumstances and the fact that Plaintiff may not have sustained serious long lasting harm is not dispositive. *See Hayes v. N.Y.C. Police Dep't,* 212 F. App'x 60, 62 (2d Cir. 2007) (summary order) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising."); *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 432 (S.D.N.Y. 2012) ("Plaintiff need not show 'permanent or severe' injuries to maintain an excessive force claim."); *Lemmo v. City of New York*, No. 08-CV-2641, 2011 WL 4592785, at *8 (E.D.N.Y. Sept. 30, 2011) (noting that "a jury may consider the lack of serious injury as evidence that the implemented force was not excessive;" however, a reasonable jury could still find that any use of force under the circumstances were inappropriate (internal quotation marks and citations omitted)); *Davenport v. County of Suffolk*, No. 99-CV-3088, 2007 WL 608125, at *11 (E.D.N.Y. Feb. 23, 2007) (holding that use of force that causes *de minimis* injury could be excessive force if "gratuitous"); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123–24 (2d Cir. 2004) (distinguishing the kind of force that can be used in "the arrest of a nonviolent suspect"); *Mesa v. City of New York*, No. 09-CV-10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (noting that "sustained injury that requires doctors' visits is not a necessary element of a successful excessive force claim"). "Under the law, police are not permitted to use any degree of force in all instances — in some circumstances, no use of force is reasonable because none is required." *Weather v. City of Mount Vernon*, No. 08-CV-192, 2011 WL 1046165, at *11 (S.D.N.Y. Mar. 22, 2011), *aff'd*, 474

F. App'x 821 (2d Cir. 2012).  The Second Circuit has found that forcibly removing a non-violent arrestee from his or her car can be the basis of an excessive force claim.  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123–24 (2d Cir. 2004) (noting that the Second Circuit has found that "allegations that police yanked arrestee out of a car, threw her against it, and pinned her arm behind her back were sufficient to withstand summary judgment" (citing *Robison v. Via*, 821 F.2d 913, 923–24 (2d Cir. 1987)).

In the instant action, Defendants allege that Defendant Glenn suspected Plaintiff of two traffic violations – failing to yield to a police vehicle and failing to provide his registration. (Def. Summ. J. 9–12.)  There is nothing in the record that indicates the Officer Defendants thought that Plaintiff was an "immediate threat to the safety of the officer or others." *Tracy*, 623 F.3d at 96.  Nor is there any indication that Plaintiff was actively trying to resist arrest or evade arrest.  Viewing the facts in the light most favorable to Plaintiff, he was peaceably sitting in his car and following police orders by handing his registration to Defendant Glenn, and, therefore, a reasonable jury could find that no force was warranted and that forcibly removing Plaintiff from his car was excessive force.[4]  *See, e.g.*, *Robison*, 821 F.2d at 923–24 (holding that forcibly

---

[4] The cases cited by the Defendant, for the proposition that forcibly removing Plaintiff was not excessive, can be distinguished because all of the cases cited by Defendants involve plaintiffs who were thought to be in possession of drugs or arms or both, or plaintiffs who were actively resistant to the police.  *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *4–5 (S.D.N.Y. July 20, 2011) ("throw[ing] [Plaintiff] flat on [his] face unto the filthy ground" was *de minimis* where drugs and two loaded firearms were found in his apartment); *Azor v. City of New York*, No. 08-CV-04473, 2012 WL 1117256, at *4 (E.D.N.Y. Mar. 30, 2012) (finding that police grabbed and pushed an arrestee, who had a firearm in his car, while ensuring that he did not have a firearm on his person was de minimis); *Rincon v. City of New York*, No. 03-CV-8276, 2005 WL 646080, at *2–5 (S.D.N.Y. Mar. 21, 2005) (throwing a suspect on the floor when the police had been informed that drugs and weapons were located in her apartment was *de minimis* force); *Vogeler v. Colbath*, No. 04-CV-6071, 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (finding that lifting the plaintiffs by their arms, while they were handcuffed, was *de minimis* force when they were found at a drug trafficking location that the police had entered pursuant to a warrant); *Cunningham v. Rodriguez*, No. 01-CV-1123, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002) (throwing the plaintiff to the ground where the

removing nonviolent plaintiff from her car could be excessive force); *Lemmo*, 2011 WL 4592785, at *8 (holding that tightening "handcuffs . . . to their maximum, for apparently gratuitous reasons" along with kneeing the plaintiff in his back and kidney area could be excessive force); *Sash v. United States*, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) (holding that tackling and throwing the plaintiff up against a mental gate could be excessive force where the plaintiff had already made arrangements to voluntarily surrender); *Hamilton v. City of New York*, No. 07-CV-3633, 2009 WL 2226105, at *9 (E.D.N.Y. July 23, 2009) (holding that "purposely tripp[ing] [the plaintiff] while he was being escorted, in handcuffs, . . . causing him to fall to the floor and cut his face" could be excessive force); *Davenport*, 2007 WL 608125, at *11 (holding that an officer intentionally hitting the plaintiff's head into the top of the police car as the plaintiff was being placed in the police car could be excessive force); *see also Maxwell v. City of New York*, 380 F.3d 106, 109–10 (2d Cir. 2004) (reversing the district court's entry of summary judgment against a plaintiff who had suffered only "minor scrapes, bumps or bruises [that] potentially could occur, often unintended, during any arrest," pain, and post-concussive syndrome, i.e. shell shock).  The Court denies Defendants' summary judgment motion as to this claim.

### (b) Handcuffing Plaintiff

Defendants also claim that the handcuffing of Plaintiff was not excessive force.  The Second Circuit has rejected the adoption of "a *per se* rule that the use of handcuffs in effecting an

---

plaintiff had begun to  yell at a judge in court and "refused to comply with a court officer's order to step back and place his hands behind his back" was *de minimis* force); *Johnson v. Police Officer #17969*, No. 99-CV-3964, 2000 WL 1877090, at *4–5 (S.D.N.Y. Dec. 27, 2000), *aff'd sub nom.*, *Johnson v. # 17969, Police Officer*, 19 F. App'x 16 (2d Cir. 2001) (finding that throwing the plaintiff on the floor and holding him there until back-up arrived was *de minimis* force when the police officer had observed the plaintiff engage in a drug sale and the arrest took place in a "darkened hallway, late at night, in a building known to be the location of drug-related activities" and the plaintiff struggled with the officer).

arrest is always reasonable." *Soares v Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993); *see also Arum v. Miller*, 331 F. Supp. 2d 99, 110 (E.D.N.Y. 2004) ("Although placing handcuffs on an individual being arrested is generally reasonable, that act is not per se reasonable."). "To determine whether the handcuffing of an arrestee was reasonable, the handcuffing must be viewed 'in light of the minimal amount of force necessary to maintain custody of [the arrestee].'" *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, at *13–14 (S.D.N.Y. Sept. 24, 2012) (citations omitted)); *see also Felmine v. City of New York*, No. 09-CV-3768, 2011 WL 4543268, at *19 (E.D.N.Y. Sept. 29, 2011) ("With respect to handcuffing-related uses of force, courts have analyzed the officers' conduct 'in light of the minimal amount of force necessary to maintain custody of [the arrestee].'" (alteration in original) (citations omitted)). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (quoting *Esmont*, 371 F. Supp. 2d at 215); *see also De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, at *13–14 (S.D.N.Y. Sept. 24, 2012) (applying the three part test to determine whether the handcuffing of plaintiff amounted to excessive force); *Felmine*, 2011 WL 4543268, at *19 (same); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 176 (E.D.N.Y. 2010) (same). The Court finds that, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that he has met this three part test.

Defendants argue that "the lack of significant injury to plaintiff's wrists shows that the handcuffs were applied properly," and, therefore, Plaintiff's handcuffing claim meets neither the first nor the third prong of the test. (Def. Summ. J. 16.) Defendants focus on the fact that Plaintiff complained of only "slight swelling" and the lack of medical records demonstrating

lasting harm.[5]  (Def. Summ. J. 17.)  Plaintiff claims that he experienced great discomfort to the point where he began to cry and that he suffered from shoulder pain for two to three months after the incident.  (Pl. 56.1 ¶ 23)  These facts are sufficient to satisfy both prongs.  *See Castro*, 739 F. Supp. 2d at 176 (holding that a plaintiff complaining of discomfort from handcuffs that resulted in "imprints on his wrists and caused his wrists to become 'red and sore'" may allege sufficient facts to go to the jury on whether force was excessive (citations omitted)); *see also Felmine*, 2011 WL 4543268, at *18–19 (holding that a plaintiff who alleged that "as a result of the tight handcuffing he had sore wrists, red marks for 'a whole month,' and some degree of bleeding" had proven sufficient facts for a reasonable jury to find excessive force from plaintiff's handcuffing and related events).  Plaintiff has alleged sufficient facts to satisfy the first and third prongs.

Defendants argue that Plaintiff's handcuffs were loosened, thus, he cannot meet the second prong.  (Def. Summ. J. 17.)  According to Plaintiff, he immediately told the Officer Defendants after being placed in the back of the police car in handcuffs that he had just undergone surgery on his arm and that being in the car with his hands cuffed tightly behind him caused him immense pain.  (Pl. Decl. ¶ 12; Pl. 56.1 ¶ 19.)  Plaintiff asserts that he "repeatedly pleaded with the Officers to somehow relieve the pain but that they were unresponsive" and that the pain was so bad that he began to cry.  (Pl. Decl. ¶ 12; Pl. 56.1 ¶ 19.)  It was not until a half hour later that they removed the handcuffs.  (Pl. Decl. ¶ 13; Pl. 56.1 ¶ 19.)  Where initial pleas

---

[5] Plaintiff need not provide medical records, his testimony regarding his pain is sufficient. *See Maxwell v. City of New York*, 380 F.3d 106, 109–10 (2d Cir. 2004) (finding that the plaintiff had sufficiently made out an excessive force claim that survived summary judgment where the only record of injury were plaintiff's complaints of pain in her arm and lower back and shell shock); *Pelayo v. Port Auth.*, No. 09-CV-8879, 2012 WL 4460798, at *9 (S.D.N.Y. Sept. 27, 2012) ("The plaintiff's testimony about the injuries and subsequent treatment alone is sufficient to support an excessive force claim on a motion for summary judgment.").

were ignored and handcuffs were only eventually loosened, the second prong can be met. *See*, *e.g.*, *Pelayo v. Port Auth.*, No. 09-CV-8879, 2012 WL 4460798, at \*9 (S.D.N.Y. Sept. 27, 2012) (holding that plaintiff met the second prong where the police did not loosen the handcuffs until the plaintiff reached the police precinct); *see also Gonzalez v. City of New York*, No. 98-CV-3084, 2000 WL 516682, at \*4 (E.D.N.Y. Mar. 7, 2000) (holding that plaintiff's claim could survive summary judgment where it was a disputed fact whether plaintiff's handcuffs were loosened). Viewing the facts in the light most favorable to Plaintiff, he meets the second prong.

Under the totality of the circumstances, there are sufficient facts in the record from which a reasonable jury could find that handcuffing Plaintiff was excessive force since he was suspected of traffic violations, was not a threat to others, and he was not evading arrest. *Lemmo*, 2011 WL 4592785, at \*8 (holding that under the totality of the circumstances, plaintiff's claim that his handcuffs were tightened along with related physical force was enough to create a question of fact for the jury); *Felmine*, 2011 WL 4543268, at \*18–20 (finding that the plaintiff could sustain an excessive force claim for tight handcuffing based on the totality of circumstances); *Arum*, 331 F. Supp. 2d 99, 110 (E.D.N.Y. 2004) (denying the defendant's summary judgment motion on an excessive force claim for handcuffing where there were disputes of fact whether handcuffing was warranted where the plaintiff was only arrested for "minor violations"); *Gonzalez*, 2000 WL 516682, at \*4 (holding that the "plaintiff, who was undisputedly not resisting arrest, was dragged to the front of the police car, slammed against the hood of the vehicle and forcibly handcuffed . . . [and] placed in very tight handcuffs" raised an

issue of fact for the jury whether the force used against him was excessive).[6] Defendants motion for summary judgment on Plaintiff's excessive force claim is denied.

### iii.  Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)).  For the following reasons, the Court finds, viewing the facts in the light most favorable to Plaintiff, that a reasonable jury could find that Defendant Ugbomah failed to intervene to prevent Defendant Glenn from violating Plaintiff's constitutional rights.

---

[6] The cases cited by Defendants to support their argument that Plaintiff's handcuffing claim fails are distinguishable from Plaintiff's case. *See Schy v. Vermont*, 2 F. App'x 101, 102 (2d Cir. 2001) (plaintiff "did not complain to [defendant] of pain, and there was insufficient evidence that [defendant] knew that [plaintiff] was in pain; that [plaintiff] made no showing that he had suffered any serious or visible injury; and that he never requested or sought medical attention"); *Bender v. City of New York*, No. 09-CV-3286, 2011 WL 4344203, at *6 (S.D.N.Y. Sept. 14, 2011) (plaintiff had only alleged "that the discomfort experienced from the handcuffing lasted for six hours"); *Richardson v. N.Y.C. Health & Hosp. Corp.*, No. 05-CV-6278, 2009 WL 804096, at *11 (S.D.N.Y. Mar. 25, 2009) (handcuffing plaintiff "was not unreasonable" where plaintiff was "'frustrated,' 'annoyed,' and 'upset'" and "admit[ed] that she reached into a marked police vehicle without authorization to do so" and where her behavior became "more erratic" as the encounter with the police proceeded); *Martinez v. City of New York*, No. 06-CV-5671, 2008 WL 2566565, at *3 (S.D.N.Y. June 27, 2008), *aff'd*, 340 F. App'x 700 (2d Cir. 2009) (handcuffing plaintiff "for a total of twenty to thirty minutes" was not excessive when the police reasonably believed he had a thirteen-year-old outstanding warrant for his arrest); *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (plaintiff had only complained of temporary discomfort while the handcuffs were on).

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson*, 17 F.3d at 557; *see also Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." (citations omitted)); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129 (2d Cir. 1997) (noting that an officer may be liable for "[f]ailure to intercede to prevent an unlawful arrest" under § 1983); *Mendoza v. County of Nassau*, No. 11-CV-02487, 2012 WL 4490539, at *11 (E.D.N.Y. Sept. 27, 2012) (stating that failure to intervene applies to claims that a plaintiff was falsely arrested). "However, '[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.'" *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21 (quoting *Anderson*, 17 F.3d at 557).

Defendants argue that Plaintiff cannot sustain any underlying violations of his constitutional rights, and, therefore, he cannot sustain a claim for failure to intervene. (Def. Summ. J. 22–23.) Defendant Ugbomah was Defendant Glenn's partner and present at the scene of the incident. (Def. 56.1 ¶ 3.) Because there are questions of fact regarding whether Defendant Glenn violated Plaintiff's right by falsely arresting Plaintiff and using excessive force, there are also questions of fact regarding whether Defendant Ugbomah failed to intervene. *See*, *e.g.*, *Richardson v. Providence*, No. 09-CV-4647, 2012 WL 1155775, at *4 (E.D.N.Y. Apr. 6, 2012) ("Because defendants' only basis for dismissing plaintiff's claims for failure to intervene against [defendants] is that plaintiff cannot establish a violation of any constitutional right, and this court has found that a material issue of fact exists as to whether plaintiff was unreasonably detained, the claim against [defendants] also cannot be dismissed on this ground."); *Wong v. Yoo*,

649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009) (holding that where the two police officers were partners and present at the scene a "reasonable fact-finder could also find that defendant . . . knew that [his partner] was making an arrest without probable cause"); *Blake v. Race*, 487 F. Supp. 2d 187, 210 (E.D.N.Y. 2007) (finding that where the other defendants were present during the alleged violations of plaintiff's rights, there were sufficient questions of fact for a jury to decide whether they violated plaintiff's rights by failing to intervene). Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Ugbomah failed to intervene.

### iv. Qualified Immunity

"[A] decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012); *see also Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (discussing the elements of qualified immunity). Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that the Officer Defendants are not immune from Plaintiff's § 1983 claims.

As discussed above, Plaintiff has presented sufficient facts from which a reasonable jury could find that the Officer Defendants are liable for his false arrest, excessive force and failure to intervene claims. *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007) (noting that Fourth Amendment violations are clearly established). Nevertheless, the Officer Defendants could still be immune from the claims if their actions were reasonable. "[A] '[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he

is doing violates that right.'" *Coollick*, 699 F.3d at 220 (quoting *Ashcroft v. al-Kidd*, 563 U.S. ---, ---, 131 S.Ct. 2074, 2083 (2011)).  In the case of false arrest, "[a]n arresting officer is entitled to qualified immunity even when . . . probable cause to arrest does not exist, if he can establish that there was arguable probable cause to arrest." *Ackerson*, 702 F.3d at 21 (internal quotation marks omitted) (citing *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (holding that a police officer is immune if he had "an objectively reasonable belief that his actions are lawful").  Defendants have the burden of establishing that arguable probable cause existed.  *Curry v. City of Syracuse*, 316 F.3d 324, 337 (2d Cir. 2003).  "[A]n officer who has used excessive force is entitled to qualified immunity if his conduct falls in the sometimes hazy border between excessive and acceptable force." *Hartman*, 350 F. App'x at 479 (internal quotation marks omitted) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004)); *see also Richardson v. N.Y.C. Health & Hosp. Corp.*, No. 05-CV-6278, 2009 WL 804096, at *7 (S.D.N.Y. Mar. 25, 2009) ("[E]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'" (quoting *Stephenson v. Doe*, 332 F.3d 68, 72 (2d Cir. 2003))).  The relevant question is whether "a reasonable officer" would have thought that the Officer Defendant's use of force was lawful. *Brosseau*, 543 U.S. at 198; *Hartman*, 350 F. App'x at 479.

There are factual issues concerning whether Plaintiff engaged in obstruction of governmental administration and violated the New York Vehicle and Traffic Law, justifying his arrest and the use of force.  A reasonable jury could believe Plaintiff's assertion that he provided his registration to Defendant Glenn, and, therefore, not even arguable probable cause existed and there was no basis for Officer Defendants to arrest Plaintiff or use any force against him.  Therefore, the Court denies summary judgment on the theory that the Officer Defendants are

immune.  *See, e.g.*, *Swartz*, 704 F.3d at 111 (denying summary judgment "because an objectively reasonable police officer would not have believed that probable cause existed" where under the plaintiff's version of facts it was clear that he was not committing a crime); *Stephenson*, 332 F.3d at 77 ("Although the qualified immunity issue should be resolved 'at the earliest possible stage in [the] litigation,' summary judgment is not appropriate when there are material factual disputes." (citations omitted)); *Curry*, 316 F.3d at 337 (denying summary judgment because the defendant had "not established that no genuine issue of material fact exists as to whether he reasonably believed that he had probable cause to arrest [the plaintiff] for a crime").

### c.  New York State Law Claims

#### i.  False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852; *see also Ackerson,* 702 F.3d 15, 19 (stating that § 1983 and New York law on false arrest claims are "substantially the same").  Therefore, since there are questions of fact about whether Plaintiff was falsely arrested under federal law, there are also questions of fact concerning whether Plaintiff was falsely arrested under state law.

#### ii.  Assault and Battery

Federal excessive force claims and state law assault and battery claims against police officers are nearly identical.  *See Humphrey v. Landers,* 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." (alteration in original) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)); *Pelayo*, 2012 WL 4460798, at *9 ("Similar to a claim for excessive force under

§ 1983, a state law claim for battery against a police officer in the course of an arrest requires the plaintiff to prove that the officer's use of force was 'excessive or objectively unreasonable under the circumstances.'" (quoting *Holland v. City of Poughkeepsie,* 935 N.Y.S.2d 583, 590 (App. Div. 2011)); *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." (citations omitted)).  Under New York state law, assault and battery claims are more plaintiff friendly, because under New York law "[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest."  *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) (citing *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001)).  Since there are questions of fact regarding Plaintiff's excessive force claim, there are also questions of fact regarding Plaintiff's state law assault and battery claims against Defendant Glenn.  *See, e.g., Pelayo*, 2012 WL 4460798, at *9; *Pierre-Antoine*, 2006 WL 1292076, at *8.  The Court denies summary judgment on the assault and battery claims against Defendant Glenn.  However, in view of Plaintiff's concession that he has not stated a claim for battery against Defendant Ugbomah and because Plaintiff likewise cannot show that Defendant Ugbomah put him in fear of imminent harmful or offensive contact, the Court grants summary judgment on the assault and battery claims against Defendant Ugbomah.[7]

---

[7] Defendants alleged in their moving papers that since there is no allegation that Defendant Ugbomah actually physically touched Plaintiff, he should be granted summary judgment on the battery claim.  (Def. Summ. J. 31.)  Battery requires actual physical contact. *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) ("A 'battery' is an intentional wrongful physical contact with another person without consent." (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 (2d Cir. 1993)); *Cunningham v. United States*,

### iii. New York State Law Immunity

The standard for determining whether police officers enjoy immunity for false arrest and assault and battery actions is the same under state law as it is under federal law. *Gilliard v. City of New York*, No. 10-CV-5187, 2013 WL 521529, at *12 & n.11 (E.D.N.Y. Feb. 11, 2013) (finding that "immunity doctrine [for state assault and battery claims] parallels federal qualified immunity jurisprudence"); *Castro*, 739 F. Supp. 2d at 178 & n.17 (E.D.N.Y. 2010) (noting that immunity under state assault and battery and federal excessive is the same); *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("[A]s is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution."); *Delgado v. City of New York*, 928 N.Y.S.2d 487, 495 (App. Div. 2011) (stating that the proper analysis for a police officer performing a discretionary function is to establish "that it was objectively reasonable for the police officer involved to believe that his or her conduct was appropriate under the circumstances, or that officers of reasonable competence

---

472 F. Supp. 2d 366, 380 (E.D.N.Y. 2007) ("In order to recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." (internal quotation marks omitted) (quoting *Johnson v. Suffolk Cnty. Police Dep't*, 665 N.Y.S.2d 440, 440 (App. Div. 1997))). Plaintiff conceded that he could not sustain a battery claim against Defendant Ugbomah in his opposition papers to the summary judgment motion. (Pl. Opp'n 37.) Assault requires that Plaintiff be put in "fear of imminent harmful or offensive contact." *Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7, 9 (2d Cir. 2009) (summary order) ("An 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 (2d Cir. 1993)); *Cunningham*, 472 F. Supp. 2d at 380 (E.D.N.Y. 2007) ("[An] 'assault' under New York law [is] 'an intentional placing of another person in fear of imminent harmful or offensive conduct.'" (quoting *Girden*, 262 F.3d at 203)). There is similarly no evidence that Defendant Ugbomah put Plaintiff in fear of imminent harmful or offensive contact. Therefore, the assault and battery claims are dismissed against Defendant Ugbomah.

could disagree as to whether his or her conduct was proper"); *Doyle v. Rondout Valley Cent. Sch. Dist.*, 770 N.Y.S.2d 480, 482 (App. Div. 2004) ("A government official performing a discretionary function is entitled to qualified immunity provided his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Defendants argue that they are entitled to immunity for the state law claims.[8] However, since Defendants failed to meet the standard for immunity under federal law, they also fail to meet standard for immunity under New York State law.

### iv. *Respondeat Superior*

New York courts have held municipalities liable under a theory of *respondeat superior* for false arrest and assault and battery claims. *See Ackerson*, 702 F.3d at 22 (holding that defendant officer's liability for false arrest claim under New York law creates liability for the city defendant "under a theory of *respondeat superior*"); *Mesa*, 2013 WL 31002, at *34 ("[U]nder New York state law, municipalities can face liability for claims such as false arrest, assault, and battery under a theory of respondeat superior."); *Sankar v. City of New York*, No. 07-CV-4726, 2012 WL 1116984, at *12 (E.D.N.Y. Mar. 30, 2012) ("Unlike claims brought pursuant to Section 1983, under New York state law, municipalities may be held vicariously liable for false arrest and malicious prosecution under a theory of *respondeat superior*."); *Linson*

---

[8] Defendants' argument in favor of immunity relies on "the judgment error theory," which is inapplicable in this case. (Pl. Opp'n 34.) The judgmental error theory applies to "discretionary or quasi-judicial acts [that] involve the exercise of reasoned judgment which could typically produce different acceptable results[.]" *Estate of Rosenbaum by Plotkin v. City of New York*, 982 F. Supp. 894, 896 (E.D.N.Y. 1997). This theory is not applicable when the officers fail to follow procedures. *Lubecki v. City of New York*, 758 N.Y.S.2d 610, 617 (App. Div. 2003); *Rodriguez v. City of New York*, 595 N.Y.S.2d 421, 425, 428–29 (App. Div. 1993). False arrest and excessive force would be outside of New York City procedures. *See, e.g., Lubecki*, 758 N.Y.S.2d at 617 (noting that the judgment error rule does not protect uses of force that go against police procedure); *Johnson v. City of New York*, 884 N.Y.S.2d 44, 45 (App. Div. 2009), *aff'd*, 15 N.Y.3d 676 (2010) ("judgment error rule does not immunize municipal defendants" when a police officer uses force that is outside of municipal procedure).

*v. City of New York*, 951 N.Y.S.2d 167, 168 (App. Div. 2012) ("A municipality may be vicariously liable for a common-law assault, premised upon an assault by a police officer, under a theory of respondeat superior."); *Eckardt v. City of White Plains*, 930 N.Y.S.2d 22, 25 (App. Div. 2011) ("[U]nlike a claim pursuant to 42 USC § 1983, a municipality may be vicariously liable on a state law assault and battery claim for torts committed by a police officer under a theory of respondeat superior.").  Because Plaintiff has sustained false arrest claims against the Officer Defendants and assault and battery claims against Defendant Glenn, Plaintiff's false arrest and assault and battery claims against Defendant New York City survive summary judgment.

III.    **Conclusion**

For the foregoing reasons, the Court grants summary judgment on the assault and battery claims against Defendant Ugbomah and denies Defendants' motion for summary judgment on all of the remaining claims.

SO ORDERED:


_____s/MKB_____
MARGO K. BRODIE
United States District Judge


Dated:  March 6, 2013
        Brooklyn, New York